UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| ELIZABETH C. SHREWSBURY | ) | |
| | ) | |
| V. | ) | NO. 2:10-CV-87 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |

## REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation regarding the denial by the Commissioner of the plaintiff's application for Supplemental Security Income under the Social Security Act. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 8 and 12].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 38 years old at the time of the denial of her application. She has a limited education. She has past relevant work experience as a cosmetologist which was light and skilled, and as a cleaner which was medium and unskilled. She has not worked since her alleged disability onset date of December 1, 2004.

Plaintiff's medical history is recounted by her attorney in his memorandum as follows:

> Plaintiff underwent eye exam by Dr. John L. Chapman on August 29, 2005, due to recently discovered diabetes. Minimal refraction error was noted, which did not require correction (Tr. 140).
> Plaintiff underwent left parietal scalp punch biopsy on February 2, 2006, due to a ten year history of diffuse hair loss becoming more severe. The resulting diagnosis was non-scarring, non-inflammatory alopecia (Tr. 141-142).
> Plaintiff has received Emergency Room treatment at Holston Valley Medical Center (Tr. 143-147). On March 5, 2005, Plaintiff presented with back and leg pain and numbness. The diagnosis was low back pain with sciatica (Tr. 147). Plaintiff returned with continued back pain on March 13, 2005. The diagnosis was low back pain with exacerbation of spondylosis (Tr. 146). On January 7, 2006, Plaintiff complained of chest pain. The final diagnosis was acute epigastric pain, questionable pill induced versus biliary colic (Tr. 145). Plaintiff returned on November 21, 2006, with complaints of back pain radiating into the right lower extremity. The diagnosis was acute exacerbation of chronic low back pain (Tr. 144).
> Plaintiff received treatment at Friends In Need Health Center from November 21, 2003 through January 22, 2007. Conditions and complaints addressed during this time include diabetes mellitus, chronic back pain due to multiple disc protrusions, persistent leg numbness, morbid obesity, multi-level degenerative disc disease in the lumbar and thoracic spines, leg cramps, hypertension, high cholesterol, lumbar radiculopathy, dyslipidemia, polycystic ovarian disease, tinea versicolor, elevated testosterone secondary to massive obesity, chest pain, and urinary frequency and urgency (Tr. 148-192). On March 13, 2005, lumbar spine x-rays showed mild spondylosis involving the vertebral endplates at several levels (Tr. 192). On March 25, 2005, MRI of the lumbar spine revealed left sided disc extrusion with mild left anterior cord compression at T11-12; degenerated disc at L4-5, with a right sided disc extrusion tracing approximately 2 cm inferiorly in the right lateral recess, with the extrusion extending near to the right S1

nerve root; severe right L5 nerve root compression; and a minor disc bulge at L5-S1. A component of right S1 nerve root compression could not be excluded (Tr. 190-190).

On September 28, 2006, MRI of the thoracic spine revealed multilevel degenerative disc disease throughout the thoracic spine; a focal disc protrusion posterolaterally on the right at T5-T6, resulting in mass effect upon the right anterior aspect of the subarachnoid space; a disc protrusion posterolaterally on the left at T6-T7; a focal disc protrusion posterolaterally on the right at T10-T11, resulting in mass effect upon the right anterior aspect of the subarachnoid space; and a disc extrusion posterolaterally on the left at T11-T12, with mass effect upon the left anterior aspect of the subarachnoid space, also contacting the left ventral aspect of the spinal cord (Tr. 187-188).

Plaintiff underwent limited exam by Dr. Karl W. Konrad on February 27, 2007. Plaintiff's height was 63 inches; her weight was 268 pounds; her blood pressure was 149/84; and she allowed ten degrees of lateral bending to either side with no backward extension and 15 degrees of forward flexion of the lumbar spine (Tr. 193-194).

On February 26, 2007, Plaintiff underwent consultative mental status exam by Steven Lawhon, Psy.D. Plaintiff was noted to have quit school in the tenth grade; to appear to be mildly to moderately anxious and depressed, as evidenced by her affect, mood, and self-report; and to appear to be depressed mainly in response to her medical problems. The diagnosis was depression due to medical reasons, with a current global assessment of functioning (GAF) of 60. Dr. Lawhon opined Plaintiff's ability to understand and remember is not significantly limited; her ability to sustain concentration and persistence is mildly limited; her social interaction is not significantly limited; and her work adaptation is mildly limited. In summary, Dr. Lawhon noted Plaintiff appeared to be mildly to moderately anxious and depressed, for which treatment was recommended (Tr. 195-199).

On March 26, 2007, a reviewing state agency psychologist opined Plaintiff is mildly limited by restriction of activities of daily living; mildly limited by difficulties in maintaining social functioning; and mildly limited by difficulties in maintaining concentration, persistence, or pace (Tr. 200-213). On August 17, 2007, a second reviewing state agency psychologist affirmed this assessment as written (Tr. 242).

On April 10, 2007, lumbar spine x-rays showed small anterior osteophytes of L1 and L2 (Tr. 214-215).

On April 18, 2007, a non-examining state agency physician opined Plaintiff can lift/carry a maximum of 20 pounds occasionally, ten pounds frequently; can stand/walk for a total of about six hours in an eight-hour workday; can sit for a total of about six hours in an eight-hour workday; and can frequently climb, balance, stoop, kneel, crouch, and crawl (Tr. 216-223).

Plaintiff continued treatment at Friends In Need Health Center from February 5, 2007 through June 25, 2007, for follow-up of gradually worsening back pain secondary to multiple disc protrusions, hypertension, polycystic ovarian disease, diabetes mellitus, leg numbness, right foot/heel pain, obesity, right arm numbness and weakness, right lower extremity weakness, and dyslipidemia (Tr. 224-238).

Dr. Mark C. Baxter examined Plaintiff on June 29, 2007, for evaluation of right heel pain with x-ray showing a calcaneal spur. The impression was plantar fasciitis, for which shoe inserts were recommended (Tr. 239-241).

> On August 17, 2007, a non-examining state agency physician opined Plaintiff can lift/ carry a maximum of 20 pounds occasionally, ten pounds frequently; can stand/walk for a total of about six hours in an eight-hour workday; and can sit for a total of about six hours in an eight-hour workday (Tr. 243-250).
> Plaintiff continued treatment at Friends In Need Health Center from October 17, 2007 through February 18, 2008, due to weight gain, obesity, chronic back pain due to multiple disc protrusions, hypertension, diabetes mellitus, and polycystic ovarian disease (Tr. 251-258, 262-269). On November 12, 2007, it was noted that Plaintiff has had neurosurgery consult and is not a candidate for back surgery (Tr. 255).

Doc. 9, pgs. 2-5].

The Administrative Law Judge ["ALJ"] found that the plaintiff had severe impairments of multiple disc protrusions/exclusions of the lumbar and thoracic spine, diabetes, and that she was "markedly obese." He did not find a mental impairment, and no argument has been raised by the plaintiff in that respect. Dr. Lawhon's report, *supra*, would provide substantial evidence to support that finding in any respect.

At the administrative hearing plaintiff testified regarding her symptoms. Her testimony is summarized in the Commissioner's brief as follows:

> Plaintiff alleged disability due to back problems (Tr. 25, 79). She stated that she experienced back pain from the middle of her back "all the way down" (Tr. 25). She also experienced numbness on the right side of her body; the lower right side stayed numb and the upper right side was numb on and off (Tr. 25).
> Due to pain, Plaintiff indicated that she stayed in bed the majority of the day about four or five days per week (Tr. 25). She could sit or stand for 10 to 15 minutes, then experienced "unbearable pain" (Tr. 26). She had not tried lifting over five pounds (Tr. 26). She alleged difficulty bending, and problems going up and down stairs (Tr. 26-27). Plaintiff also alleged depression and problems concentrating and remembering things (Tr. 123). Plaintiff testified that she cried and had problems focusing due to depression (Tr. 29).
> Plaintiff stated that she weighed 270 pounds, and that she weighed this amount within 20 pounds off and on for years (Tr. 29-30). Plaintiff stated that she had plantar fasciitis, but that medication and shoe inserts helped (Tr. 30). She also indicated that her diabetes was controlled (Tr. 31).
> Plaintiff indicated that she was advised by a surgeon that, based on her MRI, there was nothing he could do (regarding her back problem) (Tr. 27). Plaintiff testified that she took Morphine, Neurontin, and Naproxen for pain (Tr. 28). She

stated she took Wellbutrin for depression (Tr. 28-29).

[Doc. 13, pgs. 2-3].

At the hearing, the ALJ called Donna Bardsley, a Vocational Expert. He asked her to assume that the plaintiff "is restricted to light work, which is work that requires lifting 20 pounds occasionally and 10 pounds frequently. If you further assume the claimant can do no job that required repetitive bending, stooping, squatting. She could only do simple, unskilled jobs. With these restrictions...would there be jobs that the claimant could perform that exist in the regional or national economy?" Ms. Bardsley identified the jobs of hand packagers, with 400 in the region and 550,000 nationwide; sorters, with 350 in the region and 375,000 nationwide; assemblers, with 350 in the region and 550,000 nationwide; inspectors, with 400 in the region and 335,000 nationwide; and cashiers, with 800 in the region and one and one half million nationwide. (Tr. 34).

In his hearing decision, the ALJ found that the plaintiff did not have an impairment or combination of impairments that met or equaled one of the listed impairments in the "Listings." (Tr. 14). He found that she had the residual functional capacity included in his question to the Vocational Expert. (Tr. 14). He found that while plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms...," plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment..." found by the ALJ. (Tr. 15). He gave "controlling weight" to the opinion of Dr. Baxter, plaintiff's podiatrist (Tr. 240-41). (Tr. 17). He found that his residual functional capacity finding was "consistent" with the RFC found by the State Agency

physicians (216-223 and 243-250). (Tr. 17). He found also that his RFC finding was supported by the plaintiff's treatment records, clinical findings, effectiveness of the plaintiff's treatment and medication regimen, and the findings of treating and consultative examining physicians. (Tr. 17).[1]

Based upon the testimony of Ms. Bardsley, the Vocational Expert, he found that there was a significant number of jobs in the national economy which the plaintiff could perform with her limitations. Accordingly, she was found to be not disabled. (Tr. 18-19).

Plaintiff asserts that the ALJ erred in not giving adequate credence to the plaintiff's complaints of severe pain and in failing to properly consider the effects of her marked obesity. Defendant points to the reports of the State Agency non-examining physicians who doubted the pain was as bad as plaintiff says it is. He points out that there are no contrary residual functional assessments by treating physicians and that they were well aware of her obesity. Her other condition, diabetes, was well controlled according to her testimony (Tr. 31).

Plaintiff is extremely obese. Perusal of the medical records shows her weight fluctuating between 250 and over 300 pounds. She is only five feet and one inch tall.

Sadly, quite a number of disability cases involve obese claimants. In the vast majority of them, there is clear and substantial evidence that they still possess the physical ability to perform substantial gainful activity. The presence of disabling pain, and the deleterious

---

[1] The only "consultative examining physician" was Dr. Karl Konrad, who was not asked to offer a functional capacity assessment, but performed a "limited" exam on February 27, 2007, which revealed high blood pressure, 10 degrees of lateral bending, 15 degrees of forward flexion and that plaintiff's "station and gait" were normal. (Tr. 194).

effects of their obesity upon their spines and joints, are not evident in the medical records. Plaintiff's case is not so clear cut.

The MRI taken in on March 25, 2005 (Tr. 190-91) indicates substantial and severe problems, including severe nerve root compression. Dr. Hudson, one of the State Agency physicians, stated "Clmt complains of constant pain which is intolerable and excruciating, radiating into right leg. *Partly credible.*" (emphasis added). He bases this opinion on the nerve root compression. (Tr. 223). Dr. Allision, the other State Agency doctor, said that "Pain is noted, but *does not appear as severe as claimant states by observation.*" (emphasis added) (Tr. 250). Of course, Dr. Hudson and Dr. Allison did not examine the plaintiff, and thus "observed" nothing with their own eyes.

On the other hand, no physician, treating or non-treating, can actually "observe" pain. There is no doubt that some individuals experience pain all out of proportion to the conditions observed on X-rays or MRIs. There, fact finders must weigh the opinions of physicians who actually examined a person to try to determine the claimant's veracity on the severity of their symptoms. But where, as here, documented conditions are observed which *could* very likely cause severe pain, and no examining physician has weighed in on the issue, the ALJ is on shaky ground. While it is true that no examining physician has said what the plaintiff's physical capabilities are, or are not, they have prescribed narcotic pain medication for her pain.

In the face of this and the radiographic findings, and the fact that even the State Agency doctors gave the plaintiff's subjective complaints at least partial credibility, the Court feels that a thorough consultative examination is necessary. The Court always presumes that

an examining physician is going to factor in his or her personal observations, and his or her best guess on pain based upon the objective findings and subjective complaints, in making an estimate of exertional capabilities. In a case such as this, anything less is not substantial evidence.

Accordingly, it is respectfully recommended that the case be remanded to the Commissioner for a through consultative examination. Plaintiff, of course, may submit any additional evidence she may have. Therefore, it is recommended that the plaintiff's Motion for Summary Judgment [Doc. 8] be GRANTED, and that the defendant Commissioner's Motion for Summary Judgment [Doc. 12] be DENIED.[2]

                                          Respectfully submitted:

                                          s/ Dennis H. Inman
                                          United States Magistrate Judge

---

[2]Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).